# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TRACEY DOWLING,

              Plaintiff,

vs.

THE HOME DEPOT,

              Defendant.

:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO. 02-CV-3181

---

## REPLY BRIEF OF DEFENDANT HOME DEPOT U.S.A., INC.
## IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

**CARPENTER, BENNETT & MORRISSEY**
Attorneys for Home Depot U.S.A., Inc.
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-7711

PATRICK G. BRADY, ESQ. (PGB-6513)
<u>Pro</u> <u>Hac</u> <u>Vice</u>
        Of Counsel and
        On the Brief.

CLARA H. RHO, ESQ. (CHR-3245)
<u>Pro</u> <u>Hac</u> <u>Vice</u>
        On the Brief.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REPLY STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Hostile Work Environment Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Constructive Discharge Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    Retaliation Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

REPLY ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    POINT I

        PLAINTIFF'S CERTIFICATION AND THE CONCLUSORY
        ALLEGATIONS CONTAINED IN PLAINTIFF'S
        MEMORANDUM SHOULD BE DISREGARDED . . . . . . . . . . . . . . . . . . . . . . . 9

    POINT II

        PLAINTIFF ERRS IN ASSERTING THAT SUMMARY
        JUDGMENT SHOULD NOT BE GRANTED ON HER
        HOSTILE WORK ENVIRONMENT CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    POINT III

        PLAINTIFF ERRS IN ASSERTING THAT SUMMARY
        JUDGMENT SHOULD NOT BE GRANTED ON HER
        CONSTRUCTIVE DISCHARGE CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    POINT IV

        THE FACTS ALLEGED BY PLAINTIFF DO
        NOT SUPPORT HER RETALIATION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . 20

        A.    Plaintiff Has Failed to Establish a Prima Facie Case of Retaliation . . . . 20

        B.    Plaintiff Has Failed to Proffer Any Evidence Which Suggests That
            Defendant's Reason Was Pretextual . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

POINT V

PLAINTIFF IS NOT ENTITLED TO  PUNITIVE

DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

Audenreid v. Circuit City Stores, Inc.,
      97 F.Supp.2d 660 (E.D. Pa. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Andrews v. City of Philadelphia,
      895 F.2d 1469, 1482 (3d Cir. 1990)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bedford v. Southeastern Pa. Transp. Auth.,
      867 F. Supp. 288 (E.D. Pa. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Brewer v. Quaker State Oil Refining Corp.,
      72 F.3d 326 (3d Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Brooks v. City of San Mateo,
      229 F.3d 917 (9th Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Burlington Industries, Inc. v. Ellerth,
      524 U.S. 742 (1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Clowes v. Allegheny Valley Hospital,
      991 F.2d 1159 (3d Cir. 1993), cert. denied, 510 U.S. 964 (1993) . . . . . . . . . . . . . . 18, 19

Connors v. Chrylser Finance Corp.,
      160 F.3d 971 (3d Cir. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

DiIenno v. Goodwill Indus.,
      162 F.3d 235 (3d Cir. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fallon v. Ashcroft,
      No. 00-CV-5258, 2002 U.S. Dist. LEXIS 12202 (E.D. Pa. Jan. 25, 2002) . . . . . . . . . . 20

Fuentes v. Perskie,
      32 F.3d 759 (3d Cir. 1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Goss v. Exxon Office System Co.,
      747 F.2d 885 (3d Cir. 1984)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Grande v. State Farm Mut. Auto. Ins. Co.,
      83 F. Supp.2d 559 (E.D. Pa. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22

iii

Hackman v. Valley Fair,
      932 F.2d 239 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hill v. American General Finance, Inc.,
      218 F.3d 639 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Hurley v. Atlantic City Police Department,
      933 F. Supp. 396 (D.N.J. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Kent v. Henderson,
      77 F. Supp. 2d 628 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Knabe v. Boury Corp.,
      114 F.3d 407 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

Konstantopoulos v. Westvaco Corp.,
      112 F.3d 710 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Kunin v. Sears Roebuck & Co.,
      175 F.3d 289 (3d Cir. 1999), cert. denied, 528 U.S. 964 (1999) . . . . . . . . . . . . . . 13, 15

Lamacchia v. Rumsfeld,
      No. 00-CV-1439, 2002 U.S. Dist. LEXIS 21844 (E.D. Pa. Oct. 29, 2002) . . . . . . . 12, 22

Lujan v. National Wildlife Federation,
      497 U.S. 871 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 24

McLaughlin v. Rose Tree Media School Dist.,
      52 F.Supp.2d 484 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pearson v. Vaugh,
      984 F. Supp. 315 (E.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Robinson v. City of Pittsburgh,
      120 F.3d  1286 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

St. Mary's Honor Ctr. v. Hicks,
      509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Texas Dep't of Community Affairs v. Burdine,
      450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Weston v. Pennsylvania,
    251 F.3d 420 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## COURT RULES

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

## PRELIMINARY STATEMENT

Defendant Home Depot U.S.A., Inc. ("Home Depot" or "Company") submits this Reply Brief in further support of its motion for summary judgment to dismiss the Complaint of plaintiff Tracey Dowling ("plaintiff") in its entirety. As conclusively demonstrated by Home Depot in its moving brief and reinforced below, there is simply no evidence to show a genuine issue of material fact with respect to plaintiff's claims of hostile work environment, constructive discharge or retaliation.[1]

Plaintiff's opposition papers, both procedurally and substantively, fail to provide this Court with a basis to deny summary judgment in favor of Home Depot.

Plaintiff has failed to submit a statement, responding to Home Depot's statement of undisputed material facts, which complies with Fed. R. Civ. P. 56. Such failure requires that Home Depot's statement be deemed admitted. Further, plaintiff's Certification does not comply with Fed. R. Civ. P. 56(e), and thus must be disregarded. Plaintiff's Certification is replete with argument, factual and legal conclusions, and most notably, contradicts plaintiff's own sworn deposition testimony. Such a tactic may not be used to create an issue of fact.

Notwithstanding the procedural defects in plaintiff's response papers, summary judgment is still warranted because plaintiff does not raise a genuine dispute as to the key facts material to her claims of discrimination, to wit: (1) Home Depot maintains a well-publicized sexual harassment policy and plaintiff was aware of Home Depot's complaint procedure for notifying the Company of alleged harassment; (2) after plaintiff reported the single incident of alleged harassment by Mr. Kihenjo on July 7, 1999, Home Depot immediately investigated the

---

[1]The abbreviations in Home Depot's moving memorandum are used herein. Home Depot's initial memorandum of law in support of its motion for summary judgment is referred to as "Def. Mem." Plaintiff's memorandum in opposition to the motion is referred to as "Pl. Mem."

allegations; (3) Home Depot granted plaintiff's request to transfer from the Allentown Store where Mr. Kihenjo worked; (4) plaintiff no longer had contact with Mr. Kihenjo at the workplace and suffered no other harassment by him; (5) plaintiff did not suffer any adverse employment actions after she complained of the alleged harassment; and (6) she was not terminated from employment -- she resigned from Home Depot's employment in order to start employment with another company.

For all of these reasons, and the reasons stated in Home Depot's initial moving papers, summary judgment must be granted to Home Depot and plaintiff's Complaint dismissed with prejudice.

## REPLY STATEMENT OF FACTS

Home Depot incorporates by reference its Statement of Facts (hereinafter "Facts") set forth in its initial Memorandum of Law in Support of its Motion for Summary Judgment, dated and filed on November 8, 2002.

In her opposition brief, plaintiff includes a lengthy section entitled "Plaintiff's Statement of Facts" (see Pl. Mem. at 4-26). Plaintiff, however, sets forth virtually no facts as to which any dispute exists, and no disputed material facts. Plaintiff instead relies on her own conclusory assertions and unsupported characterizations to carry the day. Home Depot will not address the copious editorializing contained in plaintiff's "Statement of Fact," nor waste this Court's time parsing details regarding facts which have no bearing on its present deliberations. The following are Defendant's responses to certain of plaintiff's facts contained in her opposition brief. Defendant offers this Reply Statement of Facts solely to clarify misstatements of the record upon which plaintiff's counsel attempts to build legal arguments.

A.    Hostile Work Environment Claim

1.    With respect to Paragraph 7: Without any citation to the record, plaintiff asserts that she was "never given and never attended a formal class on the Defendant's harassment policy until after the incident of July 2, 1999." She concedes, however, that she received "informal training" prior to July 1999. Plaintiff's suggestion that she lacked training and did not have knowledge of Home Depot's anti-harassment policy is contrary to her deposition testimony. She testified under oath that she received Home Depot's employee handbook, containing the anti-harassment policy and complaint procedure, and attended an orientation where she reviewed various Home Depot policies, including its open door, equal employment and harassment policies. (Facts, ¶¶ 5-9). Moreover,

3

plaintiff obviously was aware of Home Depot's complaint procedure because she reported the alleged conduct of Mr. Kihenjo in July 1999.

2.    With respect to Paragraph 10:  Plaintiff summarily concludes that another employee, Linda Wallback, experienced "sexual harassment" by Mr. Kihenjo.  Plaintiff relies on an unsworn statement by Ms. Wallback that, at some point in time, Mr. Kihenjo "seemed to seek me out or wait for me when I came into the store to talk to me" and had conversations that "were very suggestive." No other details are given. Ms. Wallback also does not dispute that Amy Booe did not receive her statement; simply that she believes she faxed the statement and then left for Arizona for two weeks. (Bell Cert., Exh. L).[2]  Significantly, Ms. Wallback states that she "was never touched" by Mr. Kihenjo.  (Id.).  Aside from this unsworn statement from Ms. Wallback, plaintiff provides no other evidence to support her conclusory allegation that Ms. Wallback was sexually harassed.

3.    With respect to Paragraph 12:  Plaintiff's contention that she "never touched any employees or store managers in an inappropriate manner" is immaterial to this motion.  Plaintiff does not dispute that employees complained that they felt uncomfortable with plaintiff's physical contact, and, as a result, she was counseled about the incidents.  (Facts, ¶15, n.6; Pl. Mem. at 7, ¶12).

4.    With respect to Paragraph 13:  Plaintiff concedes that, although she was present at Home Depot's South Plainfield offices on July 6, 1999 and knew that the human resources department was located there, she did not report the July 2 incident until the next day -- July 7. Plaintiff admits that she complained to the police department prior to reporting it to Home Depot. Plaintiff attempts to explain that she did not report the alleged incident to Home Depot on July 6,

_____

[2]"Bell Cert." refers to the Certification of Joseph J. Bell, Esq., submitted to the Court on November 27, 2002.

4

because she was "uncomfortable with Amy Booe" and "had little faith in Ms. Booe's ability to properly handle the investigation" because she did not have "any prior professional background in human resources work before attaining her position with Home Depot." Plaintiff fails to explain the factual basis for her opinion and, more important, plaintiff's opinion as to Ms. Booe's experience in handling investigations is contrary to the record evidence. Plaintiff fails to mention that Ms. Booe testified that prior to her position as a human resources manager, she had been a department supervisor and assistant store manager with Home Depot for approximately five years; had received harassment training throughout that time; had attended two months of human resources training, including how to conduct proper investigations, prior to starting the human resources manager position; and was teaching classes on human resource issues. (Brady Reply Cert., Exh.1 at 8-22).[3] In addition, plaintiff's assertion that she was "uncomfortable telling a stranger" about the incident is inconsistent with her reporting the incident to the police.

5.    With respect to Paragraph 19:  Plaintiff's reference to the consent decree entered in Butler v. Home Depot, a failure to promote/hire case, is irrelevant to this matter. Although plaintiff asserts that the consent decree procedures regarding addressing sexual harassment complaints were violated, plaintiff fails to point to any evidence in support of this assertion. Plaintiff admitted at deposition that she filed a written appeal relating to the outcome of the investigation and that her appeal was decided. (Bell Cert., Exh. B at 276, 336-37).

6.    With respect to Paragraph 22:  Plaintiff's assertion that she had contact with Mr. Kihenjo "by way of court appearances regarding the criminal matter" cannot create an issue of fact

---

[3]"Brady Reply Cert." refers to the Reply Certification of Patrick G. Brady submitted herewith. "Brady Cert." refers to the Certification of Patrick G. Brady submitted on November 8, 2002.

for purposes of this motion.  While plaintiff chose to appear in court for Mr. Kihenjo's hearing, plaintiff cannot, and does not, dispute that she had no further contact with Mr. Kihenjo at work. (Facts, ¶ 25).

7.    With respect to Paragraph 24:  Contrary to plaintiff's assertion, Ms. Booe testified that she spoke with Jan Baughman regarding his allegations against plaintiff and Mr. Baughman submitted a written statement detailing his complaints against plaintiff.  (Brady Reply Cert., Exh. 1 at 79; Exh. 2).

B.    Constructive Discharge Claim

8.    With respect to Paragraph 27:  Other than her own speculation, Plaintiff cites no record evidence to support her contention that the reorganization of the loss prevention department occurred after she returned to work.  Contrary to plaintiff's suggestion that she was singled out, plaintiff admitted at her deposition that other employees holding the loss prevention supervisor position also had to seek other employment within Home Depot.  (Facts, ¶ 30).

9.    With respect to Paragraph 28:  It is undisputed that the inventory specialist position was plaintiff's first choice.  (Pl. Mem. at 13, ¶ 28).  It is also undisputed that plaintiff was offered the inventory specialist position for the Virginia area, but declined.  (Id. at 13, ¶ 29).  Plaintiff admits that she accepted the inventory specialist position for the Philadelphia market.  (Id. at ¶ 29).  That plaintiff preferred the Maryland market is immaterial to resolution of this motion.  Plaintiff testified that she was willing to travel from Maryland to Pennsylvania because it "wouldn't have been that extreme" since she could have stayed with her mother who lived in Pennsylvania.  (Id. at ¶ 41; Facts, ¶ 46).

10.    With respect to Paragraph 30:  Plaintiff cites no record evidence to support her

argument that the responsibilities of an inventory specialist is similar to the responsibilities of a loss prevention supervisor.  On the contrary, the record evidence shows that the inventory specialist position is substantially different from the loss prevention supervisor position.  Unlike the loss prevention supervisor whose key responsibility is to create and effectively implement a shrink plan (Facts, ¶ 56), an inventory specialist is responsible for overseeing store preparation for merchandise inventories and is responsible for accurate execution of the inventory day physical count and final physical inventory certificate.  (Facts, ¶ 33).  Indeed, the inventory specialist has no duties with respect to creating or implementing shrink plans.  (See Brady Cert., Exh. 12).

11.    With respect to Paragraph 32:  It is undisputed that plaintiff knew that the inventory specialist position required her to travel.  (Pl. Mem. at 14, ¶ 32).  Plaintiff tries to claim that she "had no choice but to accept [the inventory specialist] position."  Plaintiff fails to mention that on the Career Interest Worksheet that she completed in January 2001, she ranked the inventory specialist position her first choice (out of seven possible choices).  (Facts, ¶ 31; Brady Cert., Exh. 11).

12.    With respect to Paragraph 35:  Plaintiff cites no record evidence to support her argument that when she did not show up to work as scheduled on March 8, 2001, she had "prior knowledge that an internal auditor would be present at the store."  Even if true, this does not excuse plaintiff's failure to appear for her scheduled assignment and call in to advise of her absence.  At deposition, plaintiff admitted that she missed work and acknowledged that employees are written up when they do not show up to work.  (Facts, ¶¶ 38-39).

C.    Retaliation Claim

13.    With respect to Paragraph 46:  Although plaintiff claims that Mr. Drakis did not obtain an "outside counselor for the purposes of counseling [her] regarding the incident of July 2,

1999" (Dowling Cert., ¶34), at her deposition, she admitted that she was aware of the 1-800 number to call to seek counseling but did not do so because she "didn't need to" since "I had already spoken to Joe Bell [her attorney] and he had found Dr. McGreal for me." (Bell Cert., Exh. B at 463-64).

14.    With respect to Paragraph 47: Plaintiff's contentions in this paragraph are immaterial to resolution of this motion, since plaintiff does not dispute that the complaints were in fact made to the Company.

15.    With respect to Paragraph 49: It is undisputed that prior to her complaint of harassment in July 1999, plaintiff received unsatisfactory ratings relating to shrink on her October 1998 and March 1999 performance reviews given by Gregg Smith. (Facts, ¶ 57; Pl. Mem. at 19, ¶ 49). On her October 1998 review, she received a "1" rating (not meeting job expectations) in the area of "shrink plan." (Id.). On her March 1999 review, Mr. Smith specifically noted that plaintiff "needs to develop with store a shrink plan which focus[es] on operational and subclass issues in the bldg." (Facts, ¶ 57). Plaintiff admits that as a loss prevention supervisor, shrink is one of the key responsibilities of her job. (Facts, ¶ 56).

16.    With respect to Paragraph 51: It is undisputed by plaintiff that for two out of the three inventory cycles for which she was responsible as a loss prevention supervisor, the store's shrink performance did not meet expectations. Plaintiff tries to excuse her poor performance by stating that her first inventory figure may "possibly hav[e] been affected by plaintiff's predecessor." Other than her own speculation, Plaintiff cites no record evidence to support her assertion.

17.    With respect to Paragraph 57: In her certification, plaintiff denies the testimony of Alan Power, store manager of the Bethlehem Store, that plaintiff did not work effectively with the employees in his store and that Mr. Powers had received complaints about plaintiff's management

style.  Plaintiff claims that she "did work well with a number of associates at the store, including Patty Singlyn [sic], who assisted plaintiff with the creation of a spreadsheet that helps to ensure that all loss prevention objectives would be met."  (Pl. Mem. at 22, ¶ 57).  Ms. Singelyn, however, certifies that during the time that Ms. Dowling was the loss prevention supervisor in the Bethlehem Store, she was critical of plaintiff's performance.  (Singelyn Cert., ¶ 4).[4]  Further, Ms. Singelyn states that on numerous occasions, she complained to Alan Power about Ms. Dowling's management style. For example, Ms. Dowling, at various times,  undermined her authority as an assistant store manager by telling associates within her department to ignore her directives, and on other occasions, Ms. Dowling had a confrontational style with associates in the store.  (Id. at ¶ 4).  Ms. Singelyn's statements are consistent with Gregg Smith's comments on plaintiff's 1998 performance review where he noted that "improvement [was] needed in developing partnerships with management staff." (Facts, ¶57; Brady Cert., Exh. 19).

## REPLY ARGUMENT

### POINT I

### PLAINTIFF'S CERTIFICATION AND THE CONCLUSORY ALLEGATIONS CONTAINED IN PLAINTIFF'S MEMORANDUM SHOULD BE DISREGARDED.

Rule 56 of the Federal Rules of Civil Procedure requires a moving party for summary judgment to submit a statement of material facts with a citation to the motion record establishing the fact or showing it is uncontroverted.  The movant herein fulfilled its obligations under the rule in its "Statement of Facts" submitted in support of its Motion for Summary Judgment (hereinafter "Facts")

---

[4]"Singelyn Cert." refers to the Certification of Patricia Singelyn submitted herewith.

served and filed with its main motion papers.

The party opposing the motion, the nonmovant, must file a responding statement admitting or disputing each paragraph of the movant's statement and, like the movant, must make specific citations to the motion record to place a material fact in dispute.   Fed. R. Civ. P. 56 (e). This Court's Scheduling Order, dated June 7, 2002, also requires "papers opposing a motion for summary judgment should provide specific citations to those portions of the record which demonstrate the existence of a genuine issue of material fact." (Brady Reply Cert., Exh. 3).   A nonmovant's failure to satisfy these requirements requires that the movant's statement be deemed admitted.

In an apparent effort to proffer "evidence" in opposition to the instant motion, plaintiff has submitted her own certification to which she continually cites both in her Opposition Memorandum and her Statement of Facts.  This certification, however, should be disregarded as conclusory allegations which are unsupported and which, at times, contradict plaintiff's sworn deposition testimony.

It is well-established that an affidavit in opposition to a motion for summary judgment must (1) show affirmatively that the affiant is competent to testify to the matters stated therein, (2) be based on personal knowledge, and (3) establish facts that would be admissible at trial.  See Fed. R. Civ. P. 56(c).  The courts have held that the non-movant "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871 (1991).   Affidavits which fail to satisfy these requirements may not be considered in opposition to a motion for summary judgment.  Additionally, to the extent that plaintiff's certification contradicts her own deposition testimony, it is well-established that a party

10

may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. Hackman v. Valley Fair, 932 F.2d 239 (3d Cir. 1991).

As discussed, supra, plaintiff's opposition brief is replete with assertions without citations to deposition testimony or other evidence to support her claims.  For example: plaintiff states that she was never "formally trained" on the Company's sexual harassment policy; yet, she testified at deposition that she received Home Depot's employee handbook, containing the anti-harassment policy and complaint procedure, attended an orientation where she reviewed various Home Depot policies, including its open door, equal employment and harassment policies, and was familiar with Home Depot's policy on harassment and the procedure for reporting complaints. Plaintiff also speculates that the reorganization of the loss prevention department occurred after she returned to work and suggests that the company was trying to force her to resign by eliminating her job;  however, plaintiff admitted that other loss prevention supervisors lost their jobs and, like plaintiff, had to seek other employment within Home Depot.  Thus, plaintiff's misstatement of the facts in this case, without any support for her conclusory assertions, is inappropriate and these alleged "facts" should be disregarded by the court.

<u>POINT II</u>

**PLAINTIFF ERRS IN ASSERTING THAT
SUMMARY JUDGMENT SHOULD NOT BE
GRANTED ON HER HOSTILE WORK
ENVIRONMENT CLAIM**

In its moving papers, Home Depot demonstrated that there is no disputed material fact which could conceivably warrant a trial on the issue of whether Home Depot is vicariously liable for alleged harassment by plaintiff's co-worker, Kenneth Kihenjo. Plaintiff has failed to direct this Court's attention to any such disputed material facts.[5] Moreover, plaintiff's opposing papers do not contest the controlling legal standards but instead rely upon improper, immaterial and incompetent "evidence" in an effort to manufacture an issue of fact where none exists.

In her opposition papers, plaintiff does not dispute that Mr. Kihenjo was a co-worker. (Pl. Mem. at 6, ¶ 9). As set forth in Home Depot's moving brief (Def. Mem. at 28-29), if the person charged with creating the hostile work environment is a co-worker, liability exists only where the defendant "knew or should have known of the harassment and failed to take prompt remedial

---

[5]Plaintiff's argument that a material issue of fact exists because defendant did not address whether Mr. Kihenjo's conduct was severe or pervasive under <u>Faragher v. City of Boca Raton</u> (Pl. Mem. at 2) misses the point. Such an analysis is not necessary to a decision on the motion at issue because plaintiff has failed to establish respondeat superior liability on the part of Home Depot for the alleged harassment. Defendant also notes that the Supreme Court's "severe or pervasive" standard in <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 67 (1986), differs from the Third Circuit's "pervasive and regular" standard of <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1482 (3d Cir. 1990). Under either test, the single incident involving the alleged act of Mr. Kihenjo cannot rise to the level of being "pervasive and regular" or "severe or pervasive." <u>See</u> <u>Lamacchia v. Rumsfeld</u>, No. 00-CV-1439, 2002 U.S. Dist. LEXIS 21844, at * 34, n.8 (E.D.Pa. Oct. 29, 2002) (copy attached hereto as Exhibit B) ("three incidents alone cannot support a finding of pervasive and regular harassment"); <u>Bedford v. Southeastern Pa. Transp. Auth.</u>, 867 F. Supp. 288, 297 (E.D. Pa. 1994) (generally a plaintiff must show she was subjected to "repeated if not persistent acts of harassment"); <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 924 (9th Cir. 2000) (holding that a single incident of fondling was not severe or pervasive).

action." Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999), cert. denied, 528 U.S. 964 (1999); Kent v. Henderson, 77 F. Supp. 2d 628, 632 (E.D. Pa. 1999). Prompt remedial action is conduct "reasonably calculated to prevent further harassment." Knabe v. Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997).

Plaintiff attempts to impute liability to Home Depot for Mr. Kihenjo's alleged action on the grounds that Home Depot failed to thoroughly investigate her complaint and failed to take corrective action. (Pl. Mem. at 33). The record evidence does not support this contention; to the contrary, the undisputed record evidence demonstrates that Gregg Smith, plaintiff's direct supervisor, immediately addressed plaintiff's complaint, and that a thorough, formal investigation subsequently was conducted by Amy Booe, of Home Depot's Human Resources Department (see Def. Mem. 9-10).[6]

Further, it is undisputed that following plaintiff's July 1999 complaint, Ms. Booe conducted an investigation,[7] which resulted in a memo in Mr. Kihenjo's personnel file counseling

---

[6]Plaintiff's assertion that she did not receive formal training on Home Depot's sexual harassment policy is immaterial and has no bearing on this motion. Plaintiff testified that she received Home Depot's employee handbook containing its anti-harassment policy, reviewed the policy during orientation, and was familiar with Home Depot's anti-harassment policy, including its reporting mechanism. (Def. Mem. at 6). That plaintiff now claims she was not "formally" trained is irrelevant as she did in fact report Mr. Kihenjo's alleged conduct.

[7]Plaintiff's attempt to create an issue of fact with respect to the investigation is unavailing. Plaintiff argues that Ms. Booe was not qualified to investigate her claim because she "did not have prior background in human resources work before attaining her present position." (Pl. Mem. at 33). Plaintiff does not refer the Court to any record evidence to support this contention. In fact, Ms. Booe testified that prior to her position as a human resources manager, she had been a department supervisor and assistant store manager with Home Depot for approximately five years; had received harassment training throughout that time; she attended two months of human resources training, including how to conduct proper investigations, prior to starting the human resources manager position; and she taught classes on human resource issues. (Brady Reply Cert., Exh. 1, at 8-22).

him on Home Depot's anti-harassment policy,[8] which states that any conduct in violation of the policy would lead to discipline, up to and including dismissal. (Facts ¶¶ 19-22). Plaintiff admits that she had no further contact with Mr. Kihenjo at work, and suffered no other harassment by him.[9] (Pl. Mem. at 11, ¶ 22).

Plaintiff's assertion in her opposition papers that Home Depot did not take adequate remedial action because it concluded that her complaint could not be corroborated, is incorrect as a matter of law, and her reliance on <u>Knabe v. Boury Corp.</u>, 114 F.3d 407 (3d Cir. 1997), is misplaced.[10] In <u>Knabe</u>, the Third Circuit explored the adequacy of an investigation by an employer in response to a claim of sexual harassment. In that case, the defendant employer claimed it was not liable because it took prompt and adequate remedial measures after hearing of the complaint; the plaintiff claimed that the investigation was so flawed that it could not have produced an adequate remedial action. <u>Id.</u> at 412. The Court opined the focus was not on the adequacy of the investigation of a complaint, rather, what was important was whether the subsequent remedial action was "reasonably calculated to prevent further harassment." <u>Id.</u> at 412 (citation omitted).

In <u>Knabe</u>, the alleged harasser, a restaurant manager, was warned about the company's sexual harassment policy, told to restore plaintiff to the work schedule, and the plaintiff

---

[8]Contrary to plaintiff's interpretation (Pl. Mem. at 8, ¶17), the employee action notice itself is not evidence that Mr. Kihenjo had sexually harassed plaintiff. Rather, the purpose of the memo was to memorialize that a conversation took place and that the Company's policy respecting sexual harassment was discussed.

[9]Although plaintiff claims she had contact with Mr. Kihenjo as a result of having to appear in court for the criminal action she brought against him, she does not dispute that she had no work-related contact with him after July 1999. (Pl. Mem. at p. 11, ¶ 22).

[10]Plaintiff does not dispute that Home Depot's investigation was prompt. The investigation was conducted within ten days of plaintiff's report of alleged harassment. (Facts,¶ 23).

14

was provided with contacts should the harassment reoccur. Id. at 413. The Court held that adequate

remedial action had been taken, finding that "punitive action against the harassing employee . . . is

not necessary to insulate the employer from liability for a hostile work environment." Id. at 414.

The "law does not require that investigations into sexual harassment complaints be perfect." Id. at

412. So long as the "remedy chosen by the employer is adequate to stop the harassment, an

aggrieved employee cannot object to that selected action." Id. at 414.

Similarly, in this case, although Home Depot was unable to substantiate plaintiff's

allegations after conducting an investigation, it, nevertheless, took remedial action.[11] Mr. Kihenjo

was counseled on the Company's anti-harassment policy; the Company granted plaintiff's request

that she be reassigned from the Allentown Store; plaintiff no longer had contact with Mr. Kihenjo;

and plaintiff reported no other harassment by Mr. Kihenjo. Since adequate remedial action was

taken, no liability can be found. See id. at 413. When an "employer's response stops harassment,

there cannot be Title VII liability." Kunin v. Sears Roebuck & Co., 175 F.3d at 294 (citing Bouton

v. BMW of N. Am., Inc., 29 F.3d 103, 110 (3d Cir. 1994) ("By definition, there is no negligence if

the [sexual harassment grievance] procedure is effective.")).

As Home Depot established in its moving papers (Def. Mem. at 28-31), plaintiff's

own testimony precludes her hostile work environment claim. Plaintiff admits that after she reported

---

[11]Plaintiff's reliance on Mr. Kihenjo's plea agreement under the ARD program in November 1999 (Facts, ¶ 24, n.11), four months after Home Depot's internal investigation, is misplaced. The plea agreement has no bearing on whether Home Depot took reasonable steps in responding to plaintiff's complaint of harassment in July 1999. Moreover, plaintiff cannot rely on Linda Wallback to support her claim. Ms. Wallback confirms that she was "never touched" by Mr. Kihenjo. (Bell Cert., Exh. L). Plaintiff's assertion that Ms. Wallback's complaint was treated differently than Jan Baughman's is factually incorrect. Contrary to plaintiff's assertion, Mr. Baughman did in fact submit a statement relating to his complaints about plaintiff. (See Brady Reply Cert., Exh. 2).

15

the single incident of alleged harassment to her supervisor, Home Depot investigated her allegations and she no longer had contact with Mr. Kihenjo.  Thus, all the record evidence and the relevant case law confirm that Home Depot cannot be held liable for the alleged conduct of Mr. Kihenjo.  Because the undisputed record evidence demonstrates that Home Depot has more than satisfied its burden under the law regarding its response to plaintiff's allegation of sexual harassment, see Knabe, 114 F.3d at 413; Hurley v. Atlantic City Police Dep't, 933 F. Supp. 396, 401 (D.N.J. 1996), plaintiff's hostile work environment sexual harassment claim must be dismissed.

## POINT III

### PLAINTIFF ERRS IN ASSERTING THAT SUMMARY JUDGMENT SHOULD NOT BE GRANTED ON HER CONSTRUCTIVE DISCHARGE CLAIM

In opposition to Home Depot's motion, plaintiff has failed to produce any competent, record evidence that she was subjected to conditions of discrimination so intolerable that a reasonable person subject to them would resign.  See Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984).

At the time of her resignation from Home Depot on March 21, 2001, plaintiff held the position of inventory specialist.  Plaintiff admits that the only issue she had with the inventory specialist position was her commute.  (Pl. Mem. at 16, ¶37).  This admission is fatal to her constructive discharge claim.

An increase in commuting distance is not enough to establish constructive discharge as a matter of law.  See Grande v. State Farm Mut. Auto. Ins. Co., 83 F. Supp.2d 559, 564 (E.D. Pa. 2000) (dismissing constructive discharge claim finding that although the plaintiff "may have found

16

the [commuting] distance impossible to tolerate," he had not demonstrated an adverse employment action); Audenreid v. Circuit City Stores, Inc., 97 F.Supp.2d 660, 664 (E.D. Pa. 2000) (dismissing plaintiff's constructive discharge claim based on employer's transferring him to the identical position in a smaller store further away); DiIenno v. Goodwill Indus., 162 F.3d 235, 236 (3d Cir. 1998) (while an employer cannot transfer an employee to a job the employee cannot do, "a desire to live in a certain city" is not a job-related factor supporting a claim of constructive discharge).

　　　　In an effort to save her claim, plaintiff argues that she was subjected to "a long pattern of problems relating to [her] performance as well as the incident involving Mr. Kihenjo" which forced her to resign (Pl. Mem. at 40).[12]  Plaintiff erroneously relies on McLaughlin v. Rose Tree Media School Dist., 52 F.Supp.2d 484 (E.D. Pa. 1999) to support her constructive discharge claim. McLaughlin, however, is inapposite.  In McLaughlin, the plaintiff produced evidence that she was subjected to eight years of pervasive sexual harassment while she was employed as a custodian at a high school.

　　　　In the instant case, plaintiff cannot produce evidence of harassment, let alone a continuous pattern of harassment.  At the time of plaintiff's resignation in March 2001, plaintiff was in a new position – that of inventory specialist.  In her opposition papers, plaintiff admits that as an inventory specialist, her supervisor, David Hurley, never suggested that she resign (Facts, ¶ 41; Pl. Mem. at 16, ¶ 36), and acknowledges that Mr. Hurley "was a good guy to work for" (Facts, ¶ 40; Pl. Mem. at 16, ¶ 36). See Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993), cert.

---

[12]Based on pure speculation, plaintiff also contends that her position as a loss prevention supervisor was eliminated only after she returned to work from leave of absence in January 2001. (Pl. Mem. at 40).  Plaintiff presents no evidence that Home Depot eliminated the position for the purpose of forcing her to resign.  Plaintiff admits that loss prevention supervisors, other than herself, had to seek other employment within Home Depot.  (Facts, ¶ 30; Pl. Mem. at 13, ¶ 27).

17

denied, 510 U.S. 964 (1993)(dismissing constructive discharge claim finding that the employer never urged or suggested that the plaintiff resign).  Plaintiff further admits that while she worked for Mr. Hurley, she was not subject to any discriminatory conduct.[13]  (Facts, ¶ 40; Pl. Mem. at 16, ¶ 36). Thus, within the three months immediately preceding her resignation, plaintiff does not allege that she experienced any discriminatory conduct.

Courts have dismissed constructive discharge claims when there is a temporal divide between the period during which the plaintiff allegedly was subjected to discrimination and the resignation that allegedly stemmed from the constructive discharge.  See Connors v. Chrylser Fin. Corp., 160 F.3d 971, 974-75 (3d Cir. 1998) (holding that no constructive discharge transpired on the facts that any hostile work environment that the plaintiff allegedly experienced had ceased to exist long before he opted to resign); Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 718 (3d Cir. 1997) (holding that because "no hostile work environment existed at the time that [plaintiff] voluntarily left [defendant's] employ, [plaintiff] cannot show the necessary predicate to maintain a constructive discharge claim").  Accordingly, plaintiff's constructive discharge claim must fail because the record on discovery shows that plaintiff was not subject to discrimination at the time she resigned her employment.

Finally, contrary to plaintiff's contention that she "did not fail to consider alternatives before resigning" (Pl. Mem. at 40), the record evidence demonstrates otherwise.  Plaintiff admits that

_____

[13]Plaintiff claims the March 8, 2001 performance notice she received from Mr. Hurley was retaliatory based solely on Mr. Hurley's alleged statement that "he had never written anyone up for that many pages." (Pl. Mem. at 16, ¶ 35).  The performance notice cannot evidence retaliation since plaintiff does not dispute the content of the performance notice, that she did not report to work as scheduled, and admits that employees are written up when they do not show up to work. (Pl. Mem. at 16, ¶ 36).

David Hurley, her supervisor, advised her that he would look into alternatives for the required work-related overnight travel if she provided him with medical documentation of her condition.  (Facts, ¶ 45).  She further admits that she never provided Mr. Hurley with the requested doctor's note setting forth her travel restrictions.  In her certification, plaintiff explains that the reason "no such note was produced [was] because I had decided to resign" (Dowling Cert., ¶ 31 (emphasis added)).  Thus, by her own certification she admits that she failed to explore alternatives at Home Depot before concluding that resignation was her only option.  See Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir.), cert. denied, 510 U.S. 964 (1993) (explaining that "a reasonable employee will explore such alternative avenues thoroughly before coming to the conclusion that resignation is the only option."); Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998) ("employees are not guaranteed stress-free environments and . . . discrimination laws cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting").

       As discussed more fully in Home Depot's main brief, plaintiff resigned from Home Depot on March 21, 2001 to start employment with Lowe's.  (Def. Mem. at 36-37; Facts, ¶¶ 47, 50).  Plaintiff admits that she applied for employment at Lowe's in Maryland on September 30, 2000; that in November 2000 she interviewed at Lowe's for an assistant store manager position while she was on leave of absence from Home Depot; that she was offered employment with Lowe's on March 5, 2001, which she accepted on March 13, 2001, eight days prior to her resignation from Home Depot.  (Pl. Mem. at 12, ¶ 26; at 17, ¶ 41; at 18, ¶ 44).  Accordingly, plaintiff was not forced to resign, she chose to leave to start employment elsewhere.

## POINT IV

### _____THE FACTS ALLEGED BY PLAINTIFF DO

<u>                            </u>**NOT SUPPORT HER RETALIATION CLAIM**

<u>        </u>**A.**    **Plaintiff Has Failed to Establish a Prima Facie Case of Retaliation**

<u>            </u>Plaintiff's retaliation claim fails because she has failed to proffer any competent evidence as to two of the three essential elements of her <u>prima facie</u> case: that she was subjected to an adverse employment action by her employer; and that there was a causal link between the protected activity and the adverse employment action. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1299 (3d Cir. 1997).

"An adverse employment action is an action by an employer that is serious and tangible enough to alter plaintiff's compensation, terms, conditions, or privileges of employment or to deprive [her] of employment opportunities, or adversely affect [her] status as an employee." <u>Fallon v. Ashcroft</u>, No. 00-CV-5258, 2002 U.S. Dist. LEXIS 12202, at *36 (E.D.Pa. Jan. 25, 2002) (copy attached hereto as Exhibit A). There must be "some material detriment to the plaintiff." <u>Id.</u> at *36. "Mere idiosyncracies of personal preference are not sufficient to state injury." <u>Id.</u> at *36-37 (citations omitted). The Supreme Court defines an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." <u>Burlington Indus. Inc. v. Ellerth</u>, 524 U.S. 742, 749 (1998).

Plaintiff claims, in her opposition papers, that the following constitute adverse employment actions supportive of her retaliation claim: (i) that she was "supposed to receive arrangement for meeting with an outside counselor for the purposes of counseling plaintiff regarding

the incident, but never received such help";[14] (ii) that she was subject to "false accusations by other employees;"[15] (iii) that she was subject to a "confrontation for her discussion of the harassment complaint"; (iv) that she received a "worse" review in October 1999 than her review in March 1999; (v) that she was given "inadequate training initially with respect to her position as Loss Prevention Supervisor"; (vi) that she did not receive timely review and critique of her shrink plan by any of her supervisors and was not walked by them; and (vii) that she was transferred to store locations which required her to travel. (Pl. Mem. at 48-49).

Even if taken as true for purposes of summary judgment, plaintiff still cannot establish a retaliation claim, as none of these bases constitute adverse employment actions, as a matter of law. See Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001). "Not everything that makes an employee unhappy is an actionable adverse action." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) (conduct is adverse "only if it alters the employee's compensation, terms, conditions, or privileges of employment, or deprives him or her of employment opportunities.").

Plaintiff has presented no admissible evidence to suggest that any action was taken by Home Depot which affected "adversely the terms, conditions or privileges of the plaintiff's

---

[14]Although plaintiff claims that Mr. Drakis did not obtain an "outside counselor for the purposes of counseling [her] regarding the incident of July 2, 1999" (Dowling Cert., ¶34), she admits that she was aware of the 1-800 number to call to seek counseling but did not do so because she "didn't need to" since "I had already spoken to Joe Bell [her attorney] and he had found Dr. McGreal for me." (Bell Cert., Exh. B at 463-64). Thus, plaintiff cannot claim adverse action as a result of Mr. Drakis' alleged inaction.

[15]Although plaintiff may not think that her actions were inappropriate, plaintiff, however, does not dispute that employees reported to the Company that they felt uncomfortable with plaintiff's physical contact, and, as a result, she was counseled about the incidents. (Reply Facts, ¶3).

21

employment, or limit, segregate or classify the plaintiff in a way which would tend to deprive her of employment opportunities or otherwise affect her status as an employee." Robinson, 120 F.3d at 1300-01. Plaintiff presents no evidence that any of the acts alleged had any effect on the terms and conditions of her employment. Plaintiff does not allege that she suffered a demotion, suspension or that her duties were changed. See Lamacchia v. Rumsfeld, No. 00-CV-1439, 2002 U.S. Dist. LEXIS 21844, at * 39-40 (E.D.Pa. Oct. 29, 2002) (J. Schiller) (finding plaintiff's allegations that she received negative performance appraisal, written reprimand and given clerical duties "do not rise to the level of a significant change in employment status for her to maintain claims" under Title VII). Moreover, plaintiff does not suggest that her pay or benefits were harmed as a result of the alleged actions. See Grande v. State Farm Mut. Auto. Ins. Co., 83 F. Supp.2d 559, 564 (E.D. Pa. 2000) (granting summary judgment finding no adverse employment action in plaintiff's lateral transfer resulting in a lengthened commute); Hill v. American Gen. Fin, Inc., 218 F.3d 639, 645 (7th Cir. 2000) (finding a lateral transfer without a loss in benefits does not constitute an adverse employment action even if the employee would have to travel farther to work).

The only employment action that plaintiff arguably claims affected her terms and conditions of employment is the October 1999 performance review given by Dean Drakis. (Pl. Mem. at 13, ¶ 28). Although plaintiff claims that her "poor" rating on her performance review prevented her from applying for a "permanent position" at the Glen Burnie, Maryland Store during the reorganization of the loss prevention department (Facts, ¶ 55), as discussed fully in Home Depot's main brief, such an assertion must fail. (Def. Mem. at 39-41). See Lamacchia, 2002 U.S. Dist. LEXIS 21844, at * 40 ("the fact that plaintiff received a negative performance appraisal alone is not enough to support a finding of an adverse action").

22

Even if the October 1999 performance review constituted an adverse employment action -- which it did not-- plaintiff has not proffered any evidence that would even suggest a causal connection between plaintiff's complaint regarding Mr. Kihenjo and the performance review. Plaintiff's unsupported speculation that she received the October 1999 review in retaliation for reporting Mr. Kihenjo's alleged sexual harassment cannot be reconciled with the unrefutable fact that she was criticized for performance issues <u>before</u> she reported any harassing conduct by Mr. Kihenjo.[16] Plaintiff does not dispute that she received unsatisfactory ratings relating to shrink plan on her October 1998 and March 1999 performance reviews given by Gregg Smith. (Facts, ¶ 57; Pl. Mem. at 19, ¶ 49).[17] On her October 1998 review, she received a "1" rating (not meeting job expectations) in the area of "shrink plan." (Facts, ¶ 57). On the March 1999 review, Mr. Smith specifically noted that plaintiff "needs to develop with store a shrink plan which focus[es] on operational and subclass issues in the bldg." (Id.). Plaintiff admits that as a loss prevention supervisor, shrink is one of the key responsibilities of her job. (Facts, ¶ 56). Plaintiff also does not

---

[16]Similarly, plaintiff's assertions that (i) she did not receive adequate training initially with respect to her position as loss prevention supervisor and (vi) she did not receive timely review and critique of her shrink plan by any of her supervisors and was not walked by them, cannot be as the result of her July 1999 complaint because she is claiming that she lacked training and supervision before <u>and</u> after July 1999. Moreover, plaintiff admits that during the last three months of her employment as a loss prevention supervisor (<u>i.e.</u>, after July 1999), her supervisors performed walks with her, audited her store and tried to assist her in improving her performance. (Dowling Cert., ¶52).

[17]Moreover, to the extent plaintiff asserts that she was not notified in advance of the reviews that her performance was wanting (despite the documentation showing it was), this also proves nothing. Plaintiff's burden was to adduce evidence that she was performing her duties to her employer's satisfaction, <u>not</u> simply assert that <u>she</u> thought she was, or that she was unaware she was not. Dean Drakis, plaintiff's supervisor, testified that he had counseled plaintiff in the past regarding her job performance, and the performance evaluations, given by Gregg Smith in October 1998 and March 1999, indicate that Mr. Smith discussed with plaintiff those areas in need of improvement with regard to her performance. Whether or not plaintiff interpreted these acts as counseling is immaterial.

23

dispute that she was criticized about her inability to partner with management employees within the store, both before and after July 1999. On her 1998 performance review, Mr. Smith noted that "improvement [was] needed in developing partnerships with management staff." (Facts, ¶ 57).

Thus, plaintiff is left with only her own conclusory assertions and certification to prove the elements of the <u>prima</u> <u>facie</u> case. This is insufficient to oppose summary judgment. <u>See</u> <u>Pearson v. Vaugh</u>, 984 F. Supp. 315, 316 (E.D. Pa. 1997) (citing <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 889 (1990) ("Conclusory statements in affidavits about existence of facts do not provide the kind of evidence required to successfully oppose summary judgment.")). Because plaintiff is unable to establish any adverse employment action, or any casual connection between her complaint about Kihenjo or her filing of a criminal complaint and the alleged conduct that forms the basis of her retaliation claim, plaintiff's retaliation claim must be dismissed as a matter of law.

**B.    Plaintiff Has Failed to Proffer Any Evidence Which Suggests That Defendant's Reason Was Pretextual**

To prevail on her claim of retaliation, plaintiff must prove that defendant's articulated reasons for its actions were pretext for retaliation. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-07 (1993); <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981). Home Depot has articulated a legitimate, non-discriminatory reason for its actions, namely plaintiff's poor performance. Courts have universally held that the defendant's burden of production in articulating a legitimate, nondiscriminatory reason is minimal. <u>Burdine</u>, 450 U.S. at 256. Unable to dispute this, plaintiff does not attempt to address the issue, thus, conceding that Home Depot has met its burden.

While it is unclear from plaintiff's opposition brief, it appears that plaintiff contends that defendant's reason is pretextual because Home Depot gave her the position of inventory

24

specialist which, according to plaintiff, "included duties very similar to her previous position as a loss prevention supervisor." (Pl. Mem. at 41). Plaintiff then concludes that such employment action "creates an issue of fact as to whether Defendant truly felt that Plaintiff was deficient in a position with loss prevention and inventory duties as claimed on her performance evaluations." (Pl. Mem. at 41). Plaintiff's contentions are meritless and do not raise an inference of pretext. First, plaintiff's assertions are factually incorrect. The record evidence shows that the inventory specialist position is substantially different from the loss prevention supervisor position. Unlike the loss prevention supervisor whose key responsibility is to create and effectively implement a shrink plan (Facts, ¶ 56), an inventory specialist is responsible for overseeing store preparation for merchandise inventories and is responsible for accurate execution of the inventory day physical count and final physical inventory certificate. (Facts, ¶ 33). Indeed, the job description for inventory specialist has no duties listed with respect to creating or implementing shrink plans. (See Brady Cert., Exh. 12). Thus, plaintiff's receipt of the inventory specialist position cannot raise an inference of pretext.

  Moreover, plaintiff's belief that she was a good employee is irrelevant. It is well settled that a company has the right to exercise its business judgment, and is not required to prove that its reason for disciplining plaintiff was a good business decision. The Court does not sit as a "super-personnel department" that reexamines corporate business decisions. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326 (3d Cir. 1995). Instead, the Court must determine whether plaintiff has produced evidence capable of persuading a jury that Home Depot's evaluation of plaintiff was retaliatory. Fuentes v. Perskie, 32 F.3d 759, 764-65 (3d Cir. 1994). Plaintiff has presented no such evidence. Accordingly, plaintiff's claim of retaliation must be dismissed.

**POINT V**

25

## PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES

In their moving brief, defendant showed that plaintiff cannot produce evidence sufficient to warrant an award of punitive damages under Title VII. (Def. Mem. at 46-48). As set forth therein, such legal standards permit punitive damages only in exceptional cases, where the employer acted with malice or reckless indifference (Def. Mem. at 46). Plaintiff's opposition brief fails to set forth any factual or legal support for her request for punitive damages. Accordingly, plaintiff's requests for such damages under Title VII must be dismissed.

Plaintiff's assertion, without any record support, does not suffice to defeat defendant's entitlement to have the punitive damages demand stricken. Here plaintiff asks this Court to believe that an employer should be liable for punitive damages to: (1) an individual who resigned her employment to take a job with a competitor company; (2) an individual who is told by her supervisor that he will accommodate her request to limit her travel if she produced medical documentation of her restrictions, but which she did not do because she intended to resign; and (3) an individual who admits that after she complained of harassment by her co-worker, an investigation was conducted and she no longer had contact with that co-worker. These facts do not even remotely come close to the types of egregious conduct warranting an award of punitive damages, as a matter of law. (See Def. Mem. at 46-47).

Because plaintiff has not and cannot establish that the conduct about which she complains warrants an award of punitive damages under Title VII, her request for punitive damages must be stricken.

## CONCLUSION

26

For all the foregoing reasons, and the reasons stated in Home Depot's initial moving papers, Home Depot respectfully submits that its motion for summary judgment should be granted in its entirety and plaintiff's complaint dismissed with prejudice.

Respectfully submitted,

CARPENTER, BENNETT & MORRISSEY
Attorneys for Defendant
Home Depot U.S.A., Inc.

By: _____
      Patrick G. Brady
      Pro Hac Vice

Dated: December 13, 2002

Stephen N. Huntington, Esq.
Attorney I.D. No. 02540
HUNTINGTON HODGE & FRANKLIN, P.C.
Associate Counsel for Defendant Home Depot U.S.A., Inc.
1500 John F. Kennedy Blvd.
Suite 1032
Philadelphia, PA 19102
Phone: (215) 523-7900
Fax: (215) 523-7911

27

I:\Group3\HomeDepo\Dowling\Motions\Summary Judgment\Reply\Reply Brief.wpd